Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACKSON WHITFIELD, | Case No: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| SEMA4 HOLDINGS CORP., JASON RYAN, ELI CASDIN, DENNIS CHARNEY, EMILY LEPROUST, KEITH MEISTER, MIKE PELLINI, JOSHUA RUCH, ERIC SCHADT, RACHEL SHERMAN, and NAT TURNER, | |
| Defendants. | |

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Jackson Whitfield ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against Sema4 Holdings Corp. ("Sema4" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Sema4 and GeneDx, Inc. ("GeneDx").

2.      On March 31, 2022, Defendants caused to be filed with the SEC a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

3.      The Proxy Statement, which recommends that Sema4 shareholders vote in favor of, among other things, the issuance of Sema4 common stock in connection with the Proposed Transaction (the "Stock Issuance"), omits and/or misrepresents material information concerning: (i) Sema4's, GeneDx's, and the combined company's financial projections; (ii) the financial analyses performed by Sema4's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Goldman; and (iv) potential conflicts of interest involving Company insiders.

4.      These material misrepresentations and omissions prevent the Company's shareholders from making a fully informed voting decision on the Proposed Transaction and Stock Issuance proposal. Accordingly, the Company's shareholders will be irreparably harmed if these material misrepresentations and omissions are not remedied before the April 27, 2022 shareholder vote on the Stock Issuance.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

6.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

8.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

9.     Plaintiff is, and has been at all relevant times hereto, an owner of Sema4 common stock.

10.     Defendant Sema4 operates as a health information company that enhances diagnosis, treatment, and prevention of disease through data. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "SMFR."

11.     Defendant Jason Ryan ("Ryan") is Chairman of the Board of the Company.

12.     Defendant Eli Casdin ("Casdin") is a director of the Company.

13.     Defendant Dennis Charney ("Charney") is a director of the Company.

14.     Defendant Emily Leproust ("Leproust") is a director of the Company.

15.     Defendant Keith Meister ("Meister") is a director of the Company.

3

16.     Defendant Mike Pellini ("Pellini") is a director of the Company.

17.     Defendant Joshua Ruch ("Ruch") is a director of the Company.

18.     Defendant Eric Schadt ("Schadt") is the Founder, Chief Executive Officer, and a director of the Company.

19.     Defendant Rachel Sherman ("Sherman") is a director of the Company.

20.     Defendant Nat Turner ("Turner") is a director of the Company.

21.     Defendants Ryan, Casdin, Charney, Leproust, Meister, Pellini, Ruch, Schadt, Sherman, and Turner are collectively referred to herein as the "Individual Defendants."

22.     Defendants Sema4 and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction

23.     On January 18, 2022, Sema4 and OPKO Health, Inc. ("OPKO") announced that they had signed a definitive agreement for Sema4 to acquire OPKO's wholly owned subsidiary, GeneDx. The press release announcing the Proposed Transaction states, in pertinent part:

**Sema4 to Acquire GeneDx, Strengthening its Market-Leading AI-Driven Genomic and Clinical Data Platform**

January 18, 2022 07:00 ET | Source: Sema4

*Business combination projected to deliver $350 million in pro forma 2022 revenue*

*$200 million private placement from leading growth and life sciences investors, including Pfizer, will fortify transaction and Sema4 balance sheet*

*Katherine Stueland, CEO of GeneDx and former CCO of Invitae, to join Sema4 as Co-CEO, alongside Eric Schadt, PhD, and become a member of Sema4's Board of Directors*

*Director Jason Ryan, former CFO of Foundation Medicine, to assume role of Executive Chair of Sema4's Board of Directors, helping to drive synergy and operational efficiency in the combined company*

*Sema4 to host conference call on January 18, 2022, at 8 a.m. ET*

STAMFORD, Conn. and MIAMI, Jan. 18, 2022 (GLOBE NEWSWIRE) -- Sema4 (Nasdaq: SMFR), an AI-driven genomic and clinical data intelligence platform company, and OPKO Health, Inc. (Nasdaq: OPK) ("OPKO"), a multinational biopharmaceutical and diagnostics company, today announced they have signed a definitive agreement for Sema4 to acquire OPKO's wholly owned subsidiary, GeneDx, Inc. ("GeneDx"), a leader in genomic testing and analysis, from OPKO. The acquisition strengthens Sema4's leadership, growth, and scale for its market-leading health intelligence and genomic screening offerings. Together, Sema4 and GeneDx will be one of the largest and most advanced providers of genomic clinical testing in the U.S., with a projected $350 million in pro forma 2022 revenue.

\*       \*       \*

Katherine Stueland, President and CEO of GeneDx and former CCO of Invitae, will be appointed as Sema4 co-CEO and is expected to join the Sema4 Board of Directors upon completion of the acquisition. She brings significant commercial and operational experience and will lead overall operational excellence and business planning, and will focus on the diagnostics business. Dr. Schadt will continue to serve Sema4 as co-CEO and as a member of the Board of Directors focusing on leading R&D and the IT platform components of Sema4, the strategic development of Sema4's health intelligence capabilities, and partnerships with health systems and biopharma companies. Together as co-CEOs, Dr. Schadt and Ms. Stueland will drive overall strategy and direction of the company.

\*       \*       \*

As part of the transaction, Sema4 has also announced that it has entered into definitive agreements for a $200 million private placement of Sema4 Class A shares from a syndicate of institutional investors, including Pfizer. The acquisition and the private placement (together, the "Transaction") are expected to close concurrently in the second quarter of 2022, subject to a Sema4 stockholder vote and other conditions to closing set forth in the definitive Transaction documents.

\*       \*       \*

In conjunction with the Transaction, Jason Ryan, a member of Sema4's Board of Directors, former CFO of Foundation Medicine and most recently Chief Operating and Financial Officer of Magenta Therapeutics (Nasdaq: MGTA), will assume the role of Executive Chair of Sema4's Board of Directors. Mr. Ryan has outstanding leadership experience in the life sciences and biotechnology sectors, and an

impressive background in finance and scaling businesses. Mr. Ryan succeeds Joshua Ruch, who will continue to serve on Sema4's Board of Directors as the Chairperson of its Compensation Committee.

Based on Sema4's closing stock price as of January 14, 2022, the purchase price is approximately $623 million, including in total upfront cash, stock consideration, and contingent consideration upon commercial milestones.

*       *       *

**Acquisition Terms**
Under the terms of the agreement, Sema4 will acquire GeneDx for an upfront payment of $150 million in cash plus 80.0 million shares in Sema4, with up to an additional $150 million revenue-based milestones over the next two years (which will be payable in cash or Sema4 shares at Sema4's discretion). Based on the closing stock price of Sema4 as of January 14, 2022, the total upfront consideration represents approximately $473 million, and the total aggregate consideration including potential milestones is approximately $623 million. The acquisition, which has been unanimously approved by the Boards of Directors of both Sema4 and OPKO, is expected to close in the second quarter of 2022, subject to customary closing conditions including approval by the stockholders of Sema4.

**Private Placement**
In connection with the acquisition, Sema4 has also entered into definitive agreements for a private placement financing to sell $200 million in Class A common stock at a price of $4.00 per share from a syndicate of institutional investors, including Pfizer.

The private placement is expected to substantially close concurrently with close of the acquisition, subject to the satisfaction of customary closing conditions.

**Advisors**
Goldman Sachs & Co. LLC. acted as financial advisor and Fenwick & West LLP served as legal counsel to Sema4 on the Transaction. J.P. Morgan acted as lead financial advisor and Cowen acted as financial advisor to OPKO on the Transaction. Greenberg Traurig, P.A. served as OPKO's legal counsel. Goldman Sachs & Co. LLC. served as lead placement agent on the private placement. Jefferies LLC, Cowen, and BTIG, LLC also served as placement agents.

*       *       *

**About Sema4**
Sema4 is a patient-centered health intelligence company dedicated to advancing healthcare through data-driven insights. Sema4 is transforming healthcare by applying AI and machine learning to multidimensional, longitudinal clinical and genomic data to build dynamic models of human health and defining optimal,

individualized health trajectories. Centrellis®, our innovative health intelligence platform, is enabling us to generate a more complete understanding of disease and wellness and to provide science-driven solutions to the most pressing medical needs. Sema4 believes that patients should be treated as partners, and that data should be shared for the benefit of all.

For more information, please visit sema4.com and connect with Sema4 on Twitter, LinkedIn, Facebook and YouTube.

**About GeneDx**

GeneDx, Inc. is a global leader in genomics, providing advanced genomic testing to patients and their families. Originally founded by scientists from the National Institutes of Health, GeneDx offers a world-renowned clinical genomics program with industry-leading expertise in exome sequencing for pediatric rare and ultra-rare genetic disorders. In addition to its market-leading exome sequencing service, GeneDx offers a comprehensive suite of genetic testing services,. GeneDx is a subsidiary of BioReference Laboratories, Inc., a wholly owned subsidiary of OPKO Health, Inc. To learn more, please visit http://www.genedx.com.

**About OPKO Health**

OPKO is a multinational biopharmaceutical and diagnostics company that seeks to establish industry-leading positions in large, rapidly growing markets by leveraging its discovery, development, and commercialization expertise and novel and proprietary technologies. For more information, visit www.opko.com.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

24.     The Proxy Statement omits and/or misrepresents material information concerning: (i) Sema4's, GeneDx's, and the combined company's financial projections; (ii) the financial analyses performed by Goldman in connection with its fairness opinion; (iii) potential conflicts of interest involving Goldman; and (iv) potential conflicts of interest involving Company insiders.

25.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Board of Directors; (ii) Sema4 Board of Directors' Reasons for the Acquisition; (iii) Certain Projected Financial Information; and (iv) Opinion of Sema4's Financial Advisor.

26.     Unless and until the material misstatements and omissions (referenced below) are remedied before the April 27, 2022 shareholder vote on the Stock Issuance, the Company's

shareholders will be forced to make a voting decision on the Stock Issuance without full disclosure of all material information. In the event Defendants fail to disclose the following information before the shareholder vote, Plaintiff may seek damages resulting from Defendants' misconduct.

**1. Material Omissions Concerning Sema4's, GeneDx's, and the Combined Company's Financial Projections**

27.   The Proxy Statement omits material information concerning Sema4's, GeneDx's, and the combined company's financial projections.

28.   With respect to Sema4's, GeneDx's, and the combined company's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying Sema4's, GeneDx's, and the combined company's financial projections; (2) Sema4's, GeneDx's, and the combined company's respective net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

29.   The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Sema4 and the combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of Sema4 and the combined company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction and Stock Issuance.

30.   When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC

Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

31.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman's Analyses

32.     In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman.

33.     With respect to Goldman's "*Illustrative Discounted Cash Flow Analysis—GeneDx Standalone*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the (i) discount rates ranging from 8.5% to 10.5%, and (ii) perpetuity growth rates ranging from 2.5% to 3.5%.

34.     With respect to Goldman's "*Illustrative Enterprise Value Analysis—GeneDx Standalone*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the multiple range of 3.5x to 10.0x and of 4.0x to 7.5x.

35.     With respect to Goldman's "*Selected Public Company Comparables Analysis—*

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Apr. 3, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

*GeneDx*," the Proxy Statement fails to disclose the individual financial metrics of each company Goldman observed in its analyses, including the estimates of each company's 2021 and 2022 revenues.

36.      The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price—Sema4 Standalone*" analysis: (1) the individual inputs and assumptions underlying the (i) multiples of 6.0x to 8.0x, and (ii) discount rate of 9%; (2) the net cash for standalone Sema4; and (3) the number of fully diluted outstanding shares of Sema4 Class A common stock for standalone Sema4.

37.      With respect to Goldman's "*Selected Public Company Comparables Analysis—Sema4*," the Proxy Statement fails to disclose the individual financial metrics of each company Goldman observed in its analyses, including the estimates of each company's 2021 and 2022 revenues.

38.      The Proxy Statement fails to disclose the following concerning Goldman's "*Illustrative Present Value of Future Share Price—Combined Company*" analysis: (1) the individual inputs and assumptions underlying the (i) multiples of 6.0x to 8.0x, and (ii) discount rate of 9%; (2) the projected amount of the net cash for the combined company; and (3) the number of fully diluted outstanding shares of Sema4's Class A common stock for the combined company.

39.      The valuation methods, underlying assumptions, and key inputs used by Goldman in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Goldman's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

40.      Without the information described above, the Company's shareholders are unable to fully understand Goldman's fairness opinion and analyses, and are thus unable to determine

how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction and Stock Issuance. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Goldman

41.     The Proxy Statement omits material information concerning potential conflicts of interest involving Goldman.

42.     The Proxy Statement provides that "Goldman Sachs acted as placement agent to Sema4 on the PIPE Investment [and] Goldman Sachs expects to receive a fee for its role as placement agent for the PIPE Investment, contingent upon consummation of the PIPE Investment."

43.     The Proxy Statement, however, fails to disclose the amount of compensation Goldman has received or will receive in connection with its role as placement agent to Sema4 on the PIPE Investment, and the amount of Goldman's compensation that is contingent upon consummation of the PIPE Investment.

44.     The Proxy Statement fails to disclose the timing and nature of the past services that Goldman and/or its affiliates provided to Phillip Frost and/or his affiliates, including the amount of compensation Goldman received or expects to receive for providing each service within the past two years.

45.     Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

46.     The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

47.     The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

48.     The Proxy Statement provides the following concerning the leadership of the combined company following the consummation of the Proposed Transaction:

**New Employment Arrangements**

In connection with the execution of the Merger Agreement we entered into new employment agreements with Katherine Stueland, the Chief Executive Officer of GeneDx, Jennifer Brendel, the Chief Commercial Officer of GeneDx, and Kevin Feeley, the Chief Financial Officer of GeneDx. Each of the employment agreements will become effective as of the Closing, at which time Ms. Stueland will become our co-Chief Executive Officer, Ms. Brendel will become our Chief Growth Officer, and Mr. Feeley will become a Senior Vice President, Operations and the Head of GeneDx. The employment agreements provide for at-will employment and include a base salary of $675,000 for Ms. Stueland, $425,000 for Ms. Brendel and $400,000 for Mr. Feeley, a discretionary incentive bonus opportunity with a target amount of 100% of annual base salary for Ms. Stueland, 65% of annual base salary for Ms. Brendel and 40% of annual base salary for Mr. Feeley, an initial grant of stock options and restricted stock units with an aggregate grant-date value of $9,000,000 for Ms. Stueland, $1,750,000 for Ms. Brendel and $1,750,000 for Mr. Feeley, and standard employee benefit plan participation.

Pursuant to her employment agreement, if Ms. Stueland is terminated without "cause" or resigns for "good reason" (as such terms are defined in her employment agreement) other than in connection with a change in control, she will be entitled to receive 24 months of base salary continuation, 12 months of continued coverage under our group health plans, and accelerated vesting of a portion of her initial stock option grant, subject to her execution of a release of claims. If instead such termination occurs within the period commencing three months prior to (or the date on which we have commenced engagement with a change in control counterparty, if later) and ending 12 months following a change in control, Ms. Stueland will be entitled to receive 24 months of base salary continuation, a lump sum payment equal to two times her target annual bonus, 24 months of continued coverage under our group health plans, and accelerated vesting of her outstanding equity-based

compensation awards, subject to her execution of a release of claims. Ms. Stueland's employment agreement also includes restrictive covenants that would prohibit Ms. Stueland from soliciting our employees and exclusive consultants or competing with us during the 12-month period following her termination of employment.

Pursuant to their employment agreements, if either of Ms. Brendel or Mr. Feely is terminated without "cause" or resigns for "good reason" (as such terms are defined in their employment agreements) other than in connection with a change in control, they will be entitled to receive 9 months of base salary continuation and 12 months of continued coverage under our group health benefit plans, subject to his or her execution of a release of claims. If instead such termination occurs within the period commencing three months prior to and ending 12 months following a change in control, Ms. Brendel and Mr. Feeley would be entitled to receive 12 months of base salary continuation, a lump sum payment equal to one times his or her target annual bonus, 12 months of continued coverage under our group health benefit plans, and accelerated vesting of his or her outstanding equity-based compensation awards, subject to his or her execution of a release of claims. Ms. Brendel's and Mr. Feeley's employment agreements also include restrictive covenants that would prohibit Ms. Brendel or Mr. Feeley from soliciting our employees and exclusive consultants or competing with us during the 9-month period following their termination of employment.

In addition, pursuant to their employment agreements, each of Ms. Stueland, Ms. Brendel and Mr. Feely agreed that, during the nine-month period following the Closing, they will not: (i) sell, offer to sell, contract or agree to sell, hypothecate, pledge, grant any option to purchase or otherwise dispose of or agree to dispose of, directly or indirectly, or establish or increase a put equivalent position or liquidate or decrease a call equivalent position within the meaning of Section 16 of the Exchange Act, with respect to any shares of our Class A common stock, (ii) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of any of such shares, in cash or otherwise, or (iii) publicly announce any intention to effect any transaction specified in clause (i) or (ii).

**Board of Directors of the Company Following the Acquisition**

The following individuals will serve on the Company's board of directors following the Closing:

- Dennis Charney;
- Eli D. Casdin;
- Emily Leproust;
- Eric Schadt;
- Jason Ryan;
- Joshua Ruch;

- Katherine Stueland;
- Keith Meister;
- Michael Pellini;
- Nat Turner;
- Rachel Sherman; and
- Richard C. Pfenniger, Jr.

49.     The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

50.     Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

51.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

54.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction and/or Stock Issuance. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

55.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction and Stock Issuance.

56.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

57.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

58.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or

indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction and/or Stock Issuance. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction and/or Stock Issuance. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction and Stock Issuance, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.     Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

17

Dated: April 3, 2022

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*